IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 26 2012

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| GLORIA MCDANIEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-743-A |
| | § | |
| INTEGRACARE HOLDINGS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION
and
### ORDER

Came on for consideration the motion for summary judgment filed by defendant, IntegraCare Holdings, Inc., as to all claims and causes of action brought against it by plaintiff, Gloria McDaniel.  Plaintiff filed a response, and defendant filed a reply.  The parties also filed other motions related to the summary judgment motion, which the court will address as pertinent in this memorandum opinion and order.  Having now considered all of the parties' filings, as well as the summary judgment record and applicable legal authorities, the court concludes that the summary judgment motion should be granted.

I.

### Plaintiff's Claims

Plaintiff initiated this action by filing her complaint on October 18, 2011, asserting claims against defendant for

violations of the Americans with Disabilities Act ("ADA"), 42
U.S.C. § 12101, et seq.

## II.

### The Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment
on the following grounds:  plaintiff is unable to establish a
prima facie case of discrimination under the ADA because she
cannot show that she is a qualified individual with a disability,
that she experienced an adverse employment action, or that she
was treated less favorably than non-disabled employees; plaintiff
cannot establish that defendant's legitimate, non-discriminatory
actions were a pretext for unlawful disability discrimination;
and plaintiff is estopped from claiming discrimination on the
basis of disability due to her application and receipt of
disability benefits from the Social Security Administration
("SSA").

## III.

### Undisputed Facts

The following facts are undisputed in the summary judgment
record:

Defendant provides home health care to patients and their
families at locations throughout the state of Texas.  Plaintiff
was employed by defendant's predecessor in interest in 2002 as a

2

Certified Nurse's Aid ("CNA"), and in 2008 she became employed by defendant in that same capacity.  On or about June 8, 2009, plaintiff injured her left shoulder while assisting a patient. Plaintiff reported the injury to defendant the next day. Plaintiff sought additional medical treatment and returned to work on or about June 24, 2009.  Plaintiff performed light-duty work for defendant until September 16, 2009.

Plaintiff underwent surgery on her shoulder in September 2009, and remained off of work until mid-November 2009. Defendant provided plaintiff with light-duty work, which included primarily office duties such as filing, making copies, and answering the telephone, from mid-November until early January, 2010.  Around that time defendant's patient census declined, and the light-duty office work available for plaintiff also declined. Accordingly, in early January 2010, defendant's director of human resources, Angela Carter ("Carter"), told plaintiff that light-duty work was no longer available and that plaintiff would be placed on medical leave.  Carter sent plaintiff letters on January 7, 2010, February 5, 2010, and March 10, 2010, asking plaintiff to complete enclosed paperwork to ensure plaintiff received leave to which she was entitled under the Family and Medical Leave Act ("FMLA").  Although plaintiff failed to complete and return the paperwork, defendant nevertheless placed

3

plaintiff on FMLA leave beginning in January 2010, ending March 31, 2010.

On April 2, 2010, Carter sent plaintiff a letter informing her that all available leave had been exhausted. The letter reminded plaintiff that she had failed to communicate with defendant concerning her plans to return to work, and had not provided a release to return to work from her physician. Consequently, the April 2 letter informed plaintiff that she was being placed on inactive status until she informed defendant of her intent to return to work and provided a full release from her treating physician. Plaintiff remains on inactive status.[1]

Plaintiff filed a charge of discrimination with the EEOC, alleging that defendant discriminated against her on the basis of disability by terminating her employment in January 2010. The EEOC issued a determination letter that stated in part:

> All requirements for coverage have been met. Charging Party alleged that she was discriminated against in violation of Title I in that she was terminated from her position of Certified Nurse's Aid because of her disability and/or Respondent's perception that she had a disability.
>
> The evidence gathered during the investigation shows that Charging Party was terminated when it was determined that no light duty work was available. Charging Party was required to obtain a full release by

---

[1]Plaintiff contends that inactive status is tantamount to termination. However, it appears from the summary judgment record, including plaintiff's affidavit, that she remains on inactive status despite her characterization of such status.

the employer to perform her job of Certified Nurse's
Aide.  The employer failed to engage in any interactive
process to determine if there was any modification of
the Charging Party's CNA duties that would have enabled
her to perform the CNA job.  The Commission finds that
there is cause to believe that a violation of the
statute has occurred.

Pl.'s App. of Summ. J. Evidence ("Pl.'s App.") at 5.[2]

In or around May or June of 2010 plaintiff applied for
disability benefits from the SSA.  Although the exact date is
unclear, it is undisputed that plaintiff was awarded, and has
been receiving, disability benefits since around early 2011.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides
that the court shall grant summary judgment on a claim or defense
if there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247
(1986).  The movant bears the initial burden of pointing out to
the court that there is no genuine dispute as to any material
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).
The movant can discharge this burden by pointing out the absence
of evidence supporting one or more essential elements of the

---

[2]The parties disagree about the admissibility and weight of the EEOC determination letter. This issue is addressed infra in section V.C.

nonmoving party's claim, "since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the
nonmoving party must identify evidence in the record that creates
a genuine dispute as to each of the challenged elements of its
case.  Id. at 324.  See also Fed. R. Civ. P. 56(c) ("A party
asserting that a fact . . . is genuinely disputed must support
the assertion by . . . citing to particular parts of materials in
the record . . . .").  If the evidence identified could not lead
a rational trier of fact to find in favor of the nonmoving party
as to each essential element of the nonmoving party's case, there
is no genuine dispute for trial and summary judgment is
appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 587, 597 (1986).

V.

Analysis

A.  Evidentiary Framework

Under the ADA an employer may not discriminate against a
qualified individual because of the person's disability.  42
U.S.C. § 12112(a).  To evaluate claims of discrimination under
the ADA in the absence of direct evidence, the court looks to the
evidentiary burden-shifting framework of McDonnell Douglas Corp.

v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc.
v. Costa, 539 U.S. 90 (2003).  McInnis v. Alamo Cmty. Coll.
Dist., 207 F.3d 276, 279 (5th Cir. 2000) (citations omitted).
This framework requires plaintiff first to make out a prima facie
case of discrimination by showing that she:  (1) is disabled or
is regarded as disabled; (2) is qualified for the position; (3)
was subjected to an adverse employment action because of her
disability; and (4) was replaced by, or otherwise treated less
favorably than, employees without disabilities.  Id. at 279-80.

If plaintiff makes out a prima facie case, the burden shifts
to defendant to articulate a legitimate, non-discriminatory
reason for its actions.  Id. at 280.  If defendant meets this
burden of production, the plaintiff bears the ultimate burden of
proving that the employer's proffered reason is not true but
instead is a pretext for unlawful discrimination.  Id.

Defendant contends that plaintiff has offered no direct
evidence of discrimination and has also failed to establish her
prima facie case because, inter alia, she cannot show that she is
a qualified individual with a disability who can perform the
essential functions of her job, with or without accommodation.  A
similar ground raised in the motion is that plaintiff is estopped
from claiming that she is a qualified individual with a
disability under the ADA because of representations that she was

7

totally disabled in her SSA application for disability benefits.
The court will first consider defendant's judicial estoppel
argument.

B.   Defendant's Judicial Estoppel Defense

In conjunction with the filing of its reply brief, defendant
also filed a motion to file a summary judgment reply appendix
bearing on the judicial estoppel affirmative defense.  The court
granted the motion, and also granted plaintiff an opportunity to
respond to the items filed in the reply appendix.  In the order
granting the motion to file reply appendix, the court advised
defendant that it did not interpret defendant's answer to
plaintiff's complaint as raising the judicial estoppel defense
upon which it relied in its motion for summary judgment, and
invited the parties to file papers commenting on the propriety of
the defense.  Defendant filed a brief in support of its defense,
while plaintiff filed objections and a motion to strike.  Upon
considering all of the parties' filings on this topic, the court
has concluded that defendant should be allowed to rely on the
affirmative defense of judicial estoppel as set forth in its
motion for summary judgment.

Rule 8(c) of the Federal Rules of Civil Procedure requires a
party to "affirmatively state any avoidance or affirmative
defense, including . . . estoppel."  A defendant's failure to

plead an affirmative defense may result in waiver. <u>Lucas v.</u>
<u>United States</u>, 807 F.2d 414, 417 (5th Cir. 1986). However, when
the defendant raises the issue at a "pragmatically sufficient
time, and [the plaintiff] was not prejudiced in its ability to
respond," a court may find no waiver has occurred. <u>Id.</u> at 418
(alteration in original) (citation omitted). When the defense is
raised in a manner "that does not result in unfair surprise,"
even a defendant's "technical failure to comply precisely with
Rule 8(c) is not fatal." Id; <u>McConathy v. Dr. Pepper/Seven Up</u>
<u>Corp.</u>, 131 F.3d 558, 562 (5th Cir. 1998) (per curiam) (citations
omitted).

The Fifth Circuit in <u>McConathy</u> faced a situation similar to
the one now before the court, where the plaintiff alleged claims
against the defendant under the ADA and Texas law. <u>Id.</u> at 561.
The district court granted defendant's motion for summary
judgment on the ADA claims on the basis of judicial estoppel
because the information in the plaintiff's SSA application was
inconsistent with her ADA claims. <u>Id.</u> Although the defendant
failed to plead judicial estoppel as an affirmative defense, and
raised the issue for the first time in its motion for summary
judgment, the Fifth Circuit affirmed, finding that plaintiff
failed to show she was prejudiced by the defendant's "failure to
formally plead judicial estoppel in its answer." <u>Id.</u> at 562.

The same result is warranted here.  Plaintiff claims that she will be prejudiced by defendant's reliance on the defense of estoppel because she has not had adequate time to conduct discovery on that defense and the discovery period would close on October 15, 2012, three days after plaintiff filed her objections to the affirmative defense.  In this context, "the prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)."  Rogers v. McDorman, 521 F.3d 381, 387 (5th Cir. 2008).

Defendant filed its motion for summary judgment, raising estoppel as a ground for relief, on August 22, 2012.  Plaintiff was immediately placed on notice that defendant intended to rely on that defense.  The discovery period in this case did not close until October 15, 2012, almost two months after the date defendant filed its motion for summary judgment.  Plaintiff has offered no explanation why she was unable to conduct whatever discovery she thought was necessary or appropriate following her receipt of defendant's motion raising estoppel as a ground for relief.

Nor has plaintiff explained what discovery she would have sought or obtained as it pertains to the estoppel defense.  The

10

defense is based on plaintiff's own application for disability
benefits--a subject within plaintiff's knowledge and with which
she is thoroughly familiar.  Indeed, in her objections to
defendant's motion to file the reply appendix plaintiff
maintained that she has the entire SSA file, including the SSA's
determination letter, which she contends would counter the
judicial estoppel argument, thus raising the question of whether
discovery on the subject would have been a fruitless exercise for
plaintiff.  The court is not persuaded that plaintiff has shown
either surprise or prejudice by defendant's late assertion of
judicial estoppel.

Having resolved the issue of whether defendant is entitled
to rely on the affirmative defense of judicial estoppel, the
court concludes that it is dispositive of plaintiff's claims
under the ADA.

The ADA prohibits discrimination "against a qualified
individual on the basis of disability" regarding hiring,
discharge, compensation, or any of the terms and conditions of
the person's employment.  42 U.S.C. § 12112(a).  A "qualified
individual" under the ADA is an individual with a disability
"who, with or without reasonable accommodation, can perform the
essential functions of the employment position that such
individual holds or desires."  42 U.S.C. § 12111(8).

11

The Social Security Act ("Act") provides benefits, under appropriate circumstances, to an insured individual who "is under a disability."  42 U.S.C. § 423(a)(1)(E).  The Act defines "disability" as an

> inability to engage in any substantial gainful activity
> by reason of any . . . physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Although the two definitions are similar, "when the [Act] determines whether an individual is disabled for [disability benefits] purposes, it does <u>not</u> take the possibility of 'reasonable accommodation' into account." <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 803 (1999) (emphasis in original).  Although application for, and receipt of, disability benefits under the Act does not automatically preclude a plaintiff from establishing a claim under the ADA,

> a plaintiff's sworn assertion in an application for
> disability benefits that she is, for example, "unable
> to work" will appear to negate an essential element of
> her ADA case--at least if she does not offer a
> sufficient explanation.  For that reason, we hold that
> an ADA plaintiff cannot simply ignore the apparent
> contradiction that arises out of the earlier SSDI total
> disability claim.  Rather, she must proffer a
> sufficient explanation. . .
>
>      . . . .
>
> . . . To defeat summary judgment, that explanation must
> be sufficient to warrant a reasonable juror's
> concluding that, assuming the truth of, or the

> plaintiff's good-faith belief in, the earlier
> statement, the plaintiff could nonetheless "perform the
> essential functions" of her job, with or without
> "reasonable accommodation."

Id. at 806-07. Failure of a plaintiff to adequately explain the inconsistency will result in judicial estoppel of her ADA claim by the earlier statements regarding disability. McClaren v. Morrison Mgmt. Specialists, Inc., 420 F.3d 457, 463 (5th Cir. 2005).

In plaintiff's application to the SSA for disability benefits, plaintiff repeatedly claimed she was completely unable to use her left arm and that she struggled with numerous tasks of daily living, such as bathing, dressing, cooking, and driving, due to that injury: "I am unable to use my left arm, and it is very difficult to perform my daily activities," Def.'s Reply App. of Summ. J. Evidence ("Reply App.") at 92; plaintiff struggled to get dressed "due to lack of mobility in my left arm," id. at 93; plaintiff was unable to wash her hair adequately, struggled to dress herself, had trouble in and out of the bath, and was unable to do anything that required the use of two hands; plaintiff could no longer do major house cleaning or yard work and could only eat foods she could prepare easily with one hand; plaintiff does not drive because she is "unable to control the automobile safely with one hand," id. at 95; plaintiff "can't lift my left

13

arm, can't lift over 5 [pounds,]" can only reach up with her left arm "maybe 10 per cent," and can only use her right hand, id. at 97.  And in response to a question posed on the Disability Report--Adult--Form SSA-3368, plaintiff answered that she "had only one job in the last 15 years before I became unable to work."  Id. at 102.

The sum of plaintiff's representations to the SSA is that she was totally unable to use her left arm or hand and was unable to work as a CNA, a position inconsistent with her claims in this action that she is qualified to perform the functions of her CNA position with an accommodation.  Accordingly, plaintiff is required by Cleveland to explain her inconsistent positions.

The explanation offered by plaintiff is that she filed her application for disability benefits after defendant told her it had no work and refused to engage in the interactive process.  While technically correct, in that the SSA application was completed after the date on which defendant told plaintiff it had no more light duty for her, plaintiff still fails to explain the representation in her disability application that she "became unable to work because of [her] disabling condition on June 8, 2009," id. at 86, approximately six months before her light duty ended.  And on the Form SSA-3368, plaintiff responded that her condition became severe enough to prevent her from working on

June 8, 2009. Plaintiff's representations to the SSA thus undermine the explanation she now attempts to give regarding her inconsistent positions. The court is not persuaded by plaintiff's explanation.

Nor does plaintiff fare better with the assertion in her affidavit that she applied for and received disability benefits because she was diagnosed with depression after she was placed on inactive status. This self-serving statement is in conflict with the overwhelming evidence in plaintiff's application for disability benefits that the basis of her claim for such benefits was her inability to work due to the injury to her left shoulder. The court has found only two references to "depression" in the application papers submitted in the reply appendix: one where plaintiff stated that trying to perform activity with her left arm caused her "pain and depression/stress," and an answer of "shortly--depressed" in response to a question of how long plaintiff was able to pay attention. Id. at 96-97. The court has found nothing in the SSA papers that would cause it to think that depression was plaintiff's primary reason for applying for disability benefits.[3]

_____

[3]Plaintiff claims that the papers in defendant's reply appendix are part of a larger SSA application file, and that the papers submitted by defendant do not tell the whole story. Plaintiff has made no effort to enter into the court's record the entire SSA file, nor any additional portions thereof. Whatever the full SSA file may show, it is not before the court for consideration.

The court concludes that plaintiff has failed to offer a sufficient explanation for her inconsistent positions before the SSA and in this litigation. Accordingly, plaintiff is estopped from claiming that she is a qualified individual with a disability. Cleveland, 526 U.S. at 806-07; Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 259 (5th Cir. 2001).

C.   Plaintiff's Failure to Establish A *Prima Facie* Case

Even if the court were to disregard plaintiff's SSA application for disability benefits, defendant would still be entitled to summary judgment because of plaintiff's failure to establish her prima facie case.

1.   The EEOC Determination Letter

Plaintiff contends that the EEOC determination letter establishes her prima facie case and creates genuine issues of material fact precluding summary judgment for defendant.[4]   The court concludes that the EEOC determination letter neither sweeps as broadly as plaintiff contends, nor is wholly inadmissible as defendant argues.

---

[4]Defendant filed objections to, and motion to strike, portions of plaintiff's affidavit and the EEOC determination letter attached thereto. Defendant asks that the court not admit the EEOC letter as it is unauthenticated, conclusory, highly prejudicial, and cannot be used to create genuine issues of material fact. Rather than rule on the issues raised in the motion to strike, the court will give plaintiff's evidentiary materials to which defendant has objected whatever weight and consideration they deserve.

In litigating cases alleging employment discrimination, the court "reviews the evidence de novo, independent of any determination by the EEOC," and it is the court "who must find the facts and draw legal conclusions" from the evidence. Dickerson v. Metro. Dade Cnty., 659 F.2d 574, 579 (5th Cir. Unit B 1981). Decisions of the Fifth Circuit, considering the use of EEOC determination letters in the summary judgment context, have concluded that even when admitted the determination letter alone failed to create an issue of material fact sufficient to defeat summary judgment. See, e.g., Cruz v. Aramark Servs., Inc., 213 F. App'x 329, *335 (5th Cir. 2007) (per curiam) (affirming summary judgment for employer despite EEOC finding of discrimination); Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005) (EEOC determination letter finding discrimination not sufficient evidence of pretext and did "not permit [plaintiff] to proceed past the summary judgment stage."); Wright v. Columbia Women & Children's Hosp., 34 F. App'x 151, *3-*4 (5th Cir. 2002) (per curiam) (affirming summary judgment in favor of employer despite EEOC determination letter finding discrimination). Stated succinctly, "the EEOC's findings of [] discrimination are not dispositive on later [] discrimination suits." Price v. Fed. Express Corp., 283 F.3d 715, 725 (5th Cir. 2002).

The court is not striking the EEOC determination letter from the record; however, the court will only consider the letter in light of other evidence in the record, and will accord it whatever weight it deserves. Plaintiff contends that the determination letter establishes her prima facie case. Plaintiff is incorrect. The words "prima facie case" do not appear in the letter, nor is there any attempt therein even to attempt a discussion of the legal standard required to make such a finding. The letter does not, as plaintiff contends, relieve her of her obligation to establish her prima facie case, and none of the authorities she cites suggest otherwise.

2. No *Prima Facie* Case

As discussed, to establish a prima facie case of discrimination on the basis of disability requires plaintiff to show that she was qualified for the position at issue. Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999). Under the ADA a qualified individual with a disability is one who can perform the essential functions of the position, with or without reasonable accommodation. 42 U.S.C. § 12111(8). Hence, to avoid summary judgment plaintiff was required to show either that she could perform the essential functions of her CNA job in spite of her disability, or that a reasonable accommodation would have

enabled her to perform the essential functions.  <u>Burch</u>, 174 F.3d

at 619.

The ADA affords an employer significant latitude in

determining the "essential functions" of the position.  Under the

ADA, "consideration shall be given to the employer's judgment as

to what functions of a job are essential," and an employer's

written job description is "considered evidence of the essential

functions of the job."  42 U.S.C. § 12111(8); <u>Riel v. Elec. Data</u>

<u>Sys. Corp.</u>, 99 F.3d 678, 682 (5th Cir. 1996).  The summary

judgment record includes defendant's job description for

plaintiff's position of CNA.  The essential functions of the CNA

position include, <u>inter</u> <u>alia</u>, the ability to lift up to fifty

pounds and move patients.

It is undisputed that since her injury plaintiff has been

unable to perform the essential functions of her position without

an accommodation.

> Q.   Do you think you could perform the duties of a
> Certified Nurse at any time after you injured yourself
> on June 8th of 2009?
>
> A.   No, sir.
>
> * * * *
>
> Q.   Right.  In other words, you--after this accident
> occurred, you have never been back to a state where you
> could perform your duties as a Certified Nurse
> Assistant, have you?

A.   No.

Def.'s App. of Summ. J. Evidence ("Def.'s App.") at 10-11.[5]   The summary judgment record is also clear that no accommodation has been identified through which plaintiff could continue to perform the essential functions of her position as a CNA.   For example, plaintiff admitted that she knew of no way to modify the CNA position to accommodate the essential function of lifting fifty pounds, nor could she identify any modification that would enable her to do the pushing and pulling required in lifting and moving patients.   Plaintiff also admitted that her doctor has never released her to return to work as a CNA, with or without accommodation.

In her response and affidavit plaintiff contends that she was and is qualified to perform her CNA job provided she not engage in any heavy lifting.   This assertion not only lacks support in the summary judgment record, it also directly contradicts plaintiff's testimony, referenced above, that she has never been released to perform any of the duties of a CNA.

---

[5]Plaintiff objects to defendant's use of plaintiff's deposition testimony because it was acquired in the state court suit she filed against defendant regarding the injury that forms the basis of her ADA claim. None of plaintiff's objections to the deposition testimony have merit. Rule 32(a)(8) of the Federal Rules of Civil Procedure permits the use of deposition testimony taken in any federal- or state-court action in a later action "involving the same subject matter between the same parties." All of the requirements of Rule 32(a)(8) are met here. It is likely plaintiff's current counsel would prefer that the court disregard plaintiff's deposition testimony because much of it is unfavorable to plaintiff's federal claims. However, plaintiff has cited no authority that would warrant such action by the court.

Plaintiff cannot defeat summary judgment by submitting an
affidavit that contradicts or impeaches, without explanation, her
prior sworn testimony.  <u>Doe ex rel. Doe v. Dallas Indep. Sch.</u>
<u>Dist.</u>, 220 F.3d 380, 386 (5th Cir. 2000); <u>S.W.S. Erectors, Inc.</u>
<u>v. Infax, Inc.</u>, 72 F.3d 489, 495 (5th Cir. 1996) (citations
omitted).  Further, the suggestion by plaintiff that defendant
should have removed an essential function of her position is
unsupported by any legal authority.  The opposite is correct:
"[t]he ADA does not require an employer to relieve an employee of
any essential functions of his or her job, modify those duties,
reassign existing employees to perform those jobs, or hire new
employees to do so."  <u>Burch</u>, 174 F.3d at 621 (citations omitted).

Although plaintiff in her affidavit repeatedly contends she
attempted to discuss reasonable accommodations with defendant,
she fails to identify any such accommodation that would have
permitted her to perform the essential functions of her CNA
position.  Plaintiff complains that defendant should have, but
did not, attempt to transfer her to another position.
Reassignment to a vacant position can be a reasonable
accommodation.  42 U.S.C. § 12111(9)(B).  However, "[f]or the
accommodation of a reassignment to be reasonable, it is clear
that a position must first exist and be vacant."  <u>Burch</u>, 174 F.3d
at 620 (alteration in original) (citation omitted).  Plaintiff

21

fails to identify a single vacant position for which she contends she was qualified and into which she could have been transferred.

Plaintiff also contends that defendant could have reasonably accommodated her by allowing her to work a part-time schedule or attend to patients that do not have to be lifted.  The latter is equivalent to suggesting that defendant should have eliminated one of the essential functions of the position, something not required by the ADA.  <u>Burch</u>, 174 F.3d at 621.  Plaintiff likewise directs the court to no evidence that such a part-time position was available.  "[A]n employer has no duty whatsoever to create a new job out of whole cloth, or to create a vacancy by transferring another employee out of his job."  <u>McAlpin v. Nat'l Semiconductor Corp.</u>, 921 F. Supp. 1518, 1525 (N.D. Tex. 1996) (citations omitted).  Nor has plaintiff directed the court to evidence that she was qualified to perform the duties of this hypothetical part-time position.

In sum, the court concludes that plaintiff has failed to adduce sufficient evidence to raise a genuine issue of fact as to whether she is a "qualified individual with a disability," as contemplated by the ADA.  Because this is an essential element of plaintiff's ADA claim, the court concludes that defendant is entitled to judgment as a matter of law.

* * * *

The court has considered all of the grounds for relief set forth in the summary judgment motion and is inclined to think they are meritorious and would warrant judgment as a matter of law for defendant.  However, because the court is dismissing plaintiff's claims on the basis of judicial estoppel and on her failure to establish an element of her _prima facie_ case, it need not reach the remaining grounds of the motion.

VI.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Gloria McDaniel, against defendant, IntegraCare Holdings, Inc., be, and are hereby, dismissed with prejudice.

SIGNED October 26, 2012.

_____
JOHN McBRYDE
United States District Judge

23